UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DANTE PERSON,                                    Civil Action No. 1:10-cv-35
      Petitioner,

                                       Barrett, J.
      vs.                                        Litkovitz, M.J.

WARDEN, WARREN                                   **REPORT AND**
CORRECTIONAL INSTITUTION,                        **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon,

Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the

assistance of counsel.  This matter is before the Court on the petition and respondent's return of

writ with exhibits.  (Docs. 1, 7).

# I. PROCEDURAL HISTORY

## State Trial Proceedings

On January 20, 2006, the Hamilton County, Ohio, grand jury returned a nine-count

indictment charging petitioner with two counts of attempted murder in violation of Ohio Rev.

Code § 2923.02(A) with firearm specifications (Counts 1-2); three counts of felonious assault in

violation of Ohio Rev. Code §§ 2903.11(A)(1) and (A)(2) with firearm specifications (Counts 3-

5); one count of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)

(Count 6); one count of having weapons while under disability in violation of Ohio Rev. Code §

2923.13(A)(3) (Count 7); one count of possession of cocaine in violation of Ohio Rev. Code §

2925.11(A) with a firearm specification (Count 8); and one count of burglary in violation of Ohio

Rev. Code § 2911.12(A)(2) (Count 9).  (Doc. 7, Ex. 1).  In its direct appeal decision, the Ohio

Court of Appeals, First Appellate District, provided the following summary of the facts that led

to the indictment:[1]

> Cincinnati Police Officers Kristina Holtmann and Laureen Smith were on routine patrol in the early morning hours of January 11, 2006. The officers passed a vehicle with windows that appeared to be too darkly tinted. Additionally, the rear license plate was not illuminated. The officers activated their overhead lights and made a U-turn. The vehicle stopped and backed into a driveway before the police unit reached it. Officer Smith approached the driver's side and Officer Holtmann approached the passenger side. The driver of the car, Bryan Caulton, had an outstanding warrant. Officer Smith arrested Caulton and placed him in the back seat of the police car.

> While Officer Smith was dealing with Caulton, Officer Holtmann asked Person, who was in the front passenger seat, for identification. He did not have identification, but gave Officer Holtmann his name and date of birth. Based on previous encounters with Person, Officer Holtmann believed that he had given a false last name and asked him to exit from the vehicle. After he emerged, Officer Holtmann ordered him to place his hands behind his back. Person turned, produced a handgun, and shot Officer Holtmann in the face.

> Person immediately fled. As he was running, Officer Holtmann saw him turn and point his gun at her. At this point, she and Officer Smith returned fire. One of the shots struck Person in the leg, but he was able to continue fleeing.

> As officers were establishing the crime scene, a witness came forward and told police that Person was in the basement of a nearby residence. A perimeter was established around the house until a S.W.A.T. unit could arrive. Police then began a systematic search of the house, discovering Person in the basement. After Person was taken into custody, he was asked what he had done with the handgun. He told an officer to "go fuck [himself]."

(Doc. 7, Ex. 9, pp. 2-3).

Petitioner elected to have the weapons-under-disability charge (Count 7) tried to the

bench with the remaining counts to be tried to a jury. (Doc. 7, Ex. 2). At the close of the State's

case, the trial court granted a motion filed by petitioner for judgment of acquittal on the burglary

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

charge (Count 9) and one of the attempted murder counts (Count 2).  (Doc. 7, Ex. 3).  At the close of the trial, the jury also acquitted petitioner of the remaining attempted murder charge (Count 1), the cocaine possession charge (Count 8), and the count charging petitioner with the felonious assault of Officer Smith (Count 5).  (*See* Doc. 7, Exs. 1, 4).  Petitioner was convicted on the remaining charges of felonious assault with firearm specifications pertaining to Officer Holtmann (Counts 3-4), as well as the two weapons offenses.  (*See* Doc. 7, Exs. 1, 5).

On July 13, 2006, petitioner was sentenced to an aggregate prison term of thirty-three (33) years and six (6) months, which consisted of the following consecutive terms of imprisonment: ten (10) years for each felonious assault conviction; five (5) years for having a weapon while under disability; eighteen (18) months for carrying a concealed weapon; and seven (7) years for the firearm specifications attached to the felonious assault charges, which were merged for the purpose of sentencing.  (Doc. 7, Ex. 5).

### State Direct Appeal Proceedings

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, First Appellate District, on petitioner's behalf.  (Doc. 7, Ex. 6).  With the assistance of new counsel for appeal purposes, petitioner filed an appellate brief raising seven assignments of error, which included the following claims:

> **First Assignment of Error:**  The trial court erred by overruling appellant's motion for a mistrial during the trial after the prosecution admitted statements of the appellant as evidence against him that were not provided to him prior to trial.
>
> ***
>
> **Third Assignment of Error:**  The trial court erred by imposing consecutive sentences on the felonious assault.

(Doc. 7, Ex. 7).  On December 21, 2007, the Court of Appeals overruled the assignments of error

and affirmed the trial court's judgment.  (Doc. 7, Ex. 9).[2]

Although petitioner did not perfect a timely appeal to the Ohio Supreme Court, he was granted a delayed appeal.  (*See* Doc. 7, Exs. 10-12).  With the assistance of his appellate counsel, he filed a memorandum in support of jurisdiction raising three propositions of law, which included the following claims:

> **Proposition of Law No. 1:**  The defendant was entitled to a mistrial after the State's admitted discovery violation.

> **Proposition of Law No. 2:**  The sentence is contrary to law because ... convictions pursuant to R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2) for the same victim are allied offenses of similar import under R.C. 2941.25(A), and therefore must merge.

(Doc. 7, Ex. 13).  On December 9, 2008, the Ohio Supreme Court issued a Judgment Entry published at 898 N.E.2d 961 (Ohio 2008), summarily affirming "the judgment of the court of appeals . . . on the authority of *State v. Brown,* . . . 895 N.E.2d 149 [(Ohio 2008)]," *cert. denied,* 129 S.Ct. 1356 (2009).  (Doc. 7, Ex. 15).

Petitioner's counsel next filed a motion for reconsideration on petitioner's behalf with the Ohio Supreme Court, arguing that the "court of appeals should have been reversed on the authority of *State v. Brown.*"  (Doc. 7, Ex. 16).  On January 28, 2009, the Ohio Supreme Court denied the motion for reconsideration without opinion.  (Doc. 7, Ex. 17).

**Federal Habeas Corpus**

The same attorney who represented petitioner in the state direct review proceedings filed the instant petition on petitioner's behalf on January 22, 2010.  (*See* Doc. 1).  Petitioner alleges three grounds for relief:

**Ground One:**  The petitioner's due process rights pursuant to the Fifth and

---

[2]The Court of Appeals' opinion is published at 881 N.E.2d 924 (Ohio Ct. App. 1 Dist. 2007).

Fourteenth Amendment were violated because he was sentenced twice for the same offense.

**Ground Two:**  The petitioner's equal protection rights pursuant to the Fifth and Fourteenth Amendment were violated because he was sentenced twice for the same offense.

**Ground Three:**  The petitioner's right to a fair trial pursuant to the Sixth Amendment was violated because he was denied the right to confront witnesses when the State violated discovery rules.

(Doc. 1, pp. 8, 11, 15).

In the return of writ filed in response to the petition, respondent contends that petitioner raised only non-cognizable state-law claims in the state courts, and has waived any federal constitutional claim for relief due to his procedural defaults in the state courts.  (Doc. 7, Brief, pp. 13-24).  Respondent also argues that petitioner's claims lack merit.  (Doc. 7, Brief, pp. 26-46).

## II. OPINION

### A.  Petitioner Is Not Entitled To Relief On The Claim In Ground Three, Which Was Raised In The State Courts As Error Warranting A Mistrial As Opposed To Error Under The Sixth Amendment's Confrontation Clause

In Ground Three of the petition, petitioner alleges that he was deprived of his rights under the Sixth Amendment's Confrontation Clause when, in violation of Ohio's rules governing criminal discovery, the State failed to disclose statements he had made to a police officer during pretrial discovery and introduced those statements as evidence against him at trial.  (Doc. 1, pp. 15-17).

Specifically, petitioner challenges the following colloquy that occurred during the prosecutor's direct examination of State witness Bryant Stewart, a Cincinnati police officer who spoke with petitioner at the scene soon after petitioner was placed in custody:

5

Q.  Okay.  Did you ask Mr. Person where the weapon was?

A.  Yes.

Q.  And what did he tell you?

A.  He told me to fuck myself.

(Doc. 7, Trial Tr. 464).

At defense counsel's request, Stewart's testimony was interrupted at that point and a sidebar conference was held.  Petitioner's counsel lodged an objection to the testimony that had been elicited regarding an "unfavorable" and "highly inflammatory" statement by his client, which had not been disclosed to the defense prior to trial.  (Doc. 7, Trial Tr. 464-65).  The next day, the court heard extensive arguments by counsel for both parties as to whether or not petitioner's statement to Officer Stewart actually had been omitted from the pretrial discovery materials provided to the defense, as well as the propriety of introducing the statement as evidence against petitioner.  At one point in the discussion, the trial court asked petitioner's counsel "what, if anything, are you requesting at this time?;" counsel replied that he was requesting a mistrial because "I don't see how a jury can ... ignore saying fuck you to a police officer."  (Doc. 7, Trial Tr. 494-95).  Later, petitioner's counsel reiterated his request for a mistrial, essentially arguing that the statement brought out for the first time at trial undermined the defense theory of accidental shooting and his ability to effectively represent his client.  (Doc. 7, Trial Tr. 535-43).

The trial court ultimately determined that it could not "conclusively find" that the statement had been provided by the prosecution to defense counsel during pretrial discovery, but that at worst, any failure by the State to provide the statement was an "inadvertent ... mistake."  (Doc. 7, Trial Tr. 573).  The court agreed with the petitioner's position that "the information

6

would have been beneficial to the defendant to know ahead of time, and at this point in the trial,

. . . he would be prejudiced by the admission of the statement."  (Doc. 7, Trial Tr. 577).

However, the court also agreed with the State's position that a mistrial was not warranted and

that a curative instruction was sufficient to remedy the error.  (Doc. 7, Trial Tr. 580).  When the

jury trial resumed two days after the interruption in Stewart's testimony, the trial court began the

proceeding by giving the following curative instruction:

> I am going to give you an instruction before we resume with testimony.
>
> Ladies and gentlemen, you are instructed to disregard the statement of Officer Stewart about any alleged statement that the defendant made in the basement. And you must treat it as though you never heard it.  You may not rely on it in any way in reaching a decision in this case.

(Doc. 7, Trial Tr. 607-08; Ex. 7, p. 3).

As an initial matter, respondent has argued in the return of writ that petitioner has waived

any claim of constitutional error under the Sixth Amendment's Confrontation Clause because he

failed to fairly present the claim to the state courts.  (Doc. 5, Brief, pp. 17-24).  Respondent's

argument has merit.

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was

not 'fairly presented' to the state courts."  *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006)

(quoting  *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b),

(c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270,

275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in

order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845,

848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d

94, 97, 99-100 (6th Cir. 1985). Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

If the petitioner fails to fairly present a constitutional claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claim by the state's highest court, he may have waived the claim for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If it is determined that the petitioner procedurally defaulted the federal claim in the state courts, federal habeas review is precluded unless the petitioner can demonstrate cause for the state procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Here, as respondent has pointed out, petitioner failed to even mention at trial or on direct appeal to the Ohio Court of Appeals that Officer Stewart's challenged testimony triggered concerns of a possible violation of petitioner's rights under the Sixth Amendment's Confrontation Clause. Rather, petitioner argued only that when his previously undisclosed, "highly inflammatory" statements were elicited during Stewart's direct examination, a mistrial should have been declared because the discovery violation prejudicially impacted the jury as well as the defense strategy and theory of the case. (*See* Doc.. 7, Ex. 7, pp. 4-7; Trial Tr. 458, 464-

67).

Petitioner did raise the Confrontation Clause issue in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court.  (*See* Doc. 7, Ex. 13, p.11).  However, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider the constitutional issue, which had not been raised to or considered by the intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08cv716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[3]

Because petitioner failed to provide the state's highest court with an opportunity to correct the alleged violation of his constitutional rights under the Confrontation Clause, he procedurally defaulted and has waived the Sixth Amendment claim absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein.  *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.  No such showing has been made in this case.  Therefore, petitioner's claim that the State's discovery violation deprived him of his Sixth Amendment right to confront the witnesses

---

[3]*Cf. Mayes v. Hudson,* No. 1:07cv315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (in holding that the petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted: "Even if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

against him is waived and barred from review in this federal habeas proceeding.

Petitioner also appears to argue in Ground Three that the trial court's refusal to declare a mistrial deprived him of his due process right to a fundamentally fair trial.  (*See* Doc. 1, pp. 16-17).  The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing petitioner's claim challenging the trial court's denial of his request for a mistrial, overruled the assignment of error, reasoning in relevant part as follows:

> The Ohio Rules of Criminal Procedure give the trial court discretion to fashion a remedy for discovery violations that occur during trial.  Since the trial court is in the best position to determine whether a mistrial is needed, the decision to grant or deny a motion for a mistrial rests within the sound discretion of the trial court. We will not reverse the court's decision to deny a motion for a mistrial unless it abused its discretion.  A defendant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable.  A trial court should not order a mistrial merely because error or irregularity has occurred, unless it affects the defendant's substantial rights.  The court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible."
>
> In its discretion, the trial court in this case chose to give a curative instruction to the jury.  Because the court determined that the interests of justice were best served by allowing the trial to continue, and because the court was in the best position to determine which remedy under Crim. R. 16(E) was most appropriate, we cannot conclude that its decision was arbitrary, unreasonable, or unconscionable.

(Doc. 7, Ex. 9, p. 5) (footnote citations omitted).

Petitioner has not stated a cognizable claim for federal habeas relief to the extent he alleges that, contrary to the state appellate court's ruling, the denial of his motion for mistrial amounted to an abuse of discretion or reversible error under Ohio law.  The federal court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on

state-law questions").  Therefore, petitioner's claim is subject to review only to the extent he alleges that testimony improperly elicited by the prosecutor during Officer Stewart's direct examination "so infected the trial with unfairness as to render the resulting conviction a denial of due process," which could not be remedied other than by declaring a mistrial.  *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642-43 (1974); *see also Darden v. Wainwright,* 477 U.S. 168, 179-80, 182 (1986).

The alleged error must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial.  *United States v. Young,* 470 U.S. 1, 11-12 (1985).  Moreover, even assuming constitutional error occurred, federal habeas relief may not be granted unless the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).  Petitioner must satisfy the *Brecht* standard before he may obtain federal habeas relief on his due process claim.  *Cf. Gordon v. Kelly*, No. 98-1905, 2000 WL 145144, at **12 (6th Cir. Feb. 1, 2000); *Hensley v. McGinnis,* No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999).

Here, the record does not support petitioner's contention that the trial court's decision to give a curative instruction, rather than declare a mistrial, rose to the level of a due process violation.  In any event, the Court concludes that the alleged error did not have a substantial and injurious effect or influence in determining the jury's verdict.

Defense counsel contended at trial that petitioner's statement to Officer Stewart to "go fuck [himself]" was so "highly inflammatory" that the jury could not render an unbiased, impartial verdict.  However, when viewed in the context of the entire record, it is highly doubtful that the isolated, passing remark, which the jury was specifically instructed to disregard

and to treat "as though you never heard it," prejudicially affected the jurors' ability to render an impartial verdict based solely on the evidence presented at trial.  Indeed, the jury acquitted petitioner on the remaining attempted murder count, on the cocaine possession charge, and on the felonious assault count pertaining to Officer Smith.  The three verdicts of acquittal demonstrate that, contrary to petitioner's contention, the jury was not biased against petitioner or prejudicially influenced by his statement to Officer Stewart  in determining the guilty or not guilty verdicts in this case.

Petitioner also has argued, both in the state courts and in the instant habeas petition, that he was prejudiced because advance notice of the statement would have aided in preparing and presenting the defense that the shooting was accidental.  It is petitioner's position that "[t]here was no overwhelming evidence that [petitioner] intentionally shot a police officer," and that his statement to Officer Stewart exhibiting "animosity" to a police officer "was the only evidence [introduced at trial] that arguably supported an intentional shooting."  (Doc. 1, p. 16).

There are two problems with petitioner's argument.   First, contrary to petitioner's contention, direct evidence was presented at trial to establish petitioner's guilt on the felonious assault charges and to refute the defense theory of accidental shooting.  Most significantly, the victim, Officer Holtmann, testified in pertinent part as follows:

> So as he stepped out of the car and I told him to step out and face the car and he did.  He had a black jacket on that he had his left arm in, and it was kind of just draped around his shoulder and his right arm wasn't in the jacket.  And I had him place his left hand behind his back.  And he starts wiggling around with his right arm.  And I asked him: What are you doing?  And he was, like, I'm just putting my coat on, so I told him, I said, put your hands behind your back.
>
> After I told him to put his hands behind his back, he had spun to the left and had turned around and shot me in the top of my hat.

12

(Doc. 7, Trial Tr. 435).[4]  The jury could have reasonably inferred from petitioner's deliberate actions that the shooting was "knowingly caused" as opposed to accidental.

Second, it is unlikely that the jury, properly instructed on the proof and elements required to establish petitioner's guilt beyond a reasonable doubt for each offense, would have found that petitioner "knowingly caused . . . physical harm" to Officer Holtmann on the basis of a statement it was expressly instructed to disregard.  Even assuming that no curative instruction had been given, it is highly doubtful that instead of relying on the testimony of eyewitnesses who were present at the scene of the shooting for the purpose of determining whether the shooting was "knowingly caused" or merely accidental, the jury would have drawn any inference of guilt from petitioner's irrelevant and non-probative post-arrest statement to Officer Stewart to "fuck [himself]."

Accordingly, in sum, the Court concludes that petitioner is not entitled to relief based on the claim alleged in Ground Three stemming from the trial court's denial of his motion for mistrial for a pretrial discovery violation, which was instead remedied by way of a curative instruction.  Petitioner procedurally defaulted and has waived any claim of a violation of the Sixth Amendment's Confrontation Clause.  Moreover, to the extent he alleges the trial court's ruling deprived him of a fair trial, he has not demonstrated that the alleged error rose to the level of a due process violation or had a substantial and injurious effect or influence in determining the jury's verdict.

---

[4]Although Officer Holtmann testified she was shot "in the top of [her] hat," she further testified that the gunshot broke her glasses and cut across her face.  (Doc. 7, Trial Tr. 440).  She underwent surgery for the injury to the right side of her face and said she will "always have a scar there."  (Doc. 7, Trial Tr. 442).

**B.  Petitioner Is Entitled To Relief To The Extent He Alleges That He Was Sentenced Twice For The Same Offense Because (1) The Double Jeopardy Claim Alleged In Ground One Is Not Waived, And (2) The Ohio Courts' Adjudication Of That Claim Constituted An Unreasonable Application Of Controlling Supreme Court Precedents**

In Ground One of the petition, petitioner alleges that his due process rights were violated "because he was sentenced twice for the same offense" in violation of the Constitution's Double Jeopardy Clause when the trial court failed to merge his two felonious assault convictions, stemming from a single act involving one victim, for sentencing purposes.  (Doc. 1, pp. 8-11).  In Ground Two, petitioner challenges the sentencing decision on equal protection grounds, arguing that he was "given disparate treatment" by the Ohio courts, which had granted relief on multiple punishment claims brought by "similarly situated" defendants in analogous cases.  (Doc. 1, pp. 11-14).

In the return of writ filed in response to the petition, respondent contends that the constitutional claims alleged in Grounds One and Two are barred from review because petitioner failed to fairly present the federal issues to the state courts.  Respondent further contends that to the extent petitioner argued on appeal in the state courts that the two felonious assault counts should have been merged for sentencing purposes as "allied offenses of similar import" under Ohio Rev. Code § 2941.25(A), he raised a claim of error under state-law only, which is not a basis for federal habeas relief.  (Doc. 7, Brief, pp. 7-9, 13-17).

As respondent has contended, it appears that the equal protection claim alleged in Ground Two may be procedurally barred from review because petitioner did not raise the constitutional issue to the state courts for consideration.  Petitioner argued in his motion for reconsideration to the Ohio Supreme Court that, in accordance with other state supreme court precedents relying on *State v. Brown*, 895 N.E.2d 149 (Ohio 2008), *cert. denied,* 129 S.Ct. 1356 (2009), in reversing

14

appellate court rulings on the "multiple punishment" issue, the Ohio Court of Appeals' decision also should have been reversed instead of affirmed on the authority of *Brown*.  (*See* Doc. 7, Ex. 16).  However, petitioner never claimed, as alleged in Ground Two, that he was subjected to "disparate treatment" by the state courts, which amounted to a violation of his rights under the Fourteenth Amendment's Equal Protection Clause.  (*See* Doc. 7, Exs. 7, 13, 16).  In any event, the Court need not decide the question pertaining to Ground Two because, as discussed below, the undersigned finds that the double jeopardy claim alleged in Ground One is subject to review on the merits and that petitioner is entitled to habeas relief on the basis of that claim.

**1.  Petitioner's Double Jeopardy Claim Was Fairly Presented To The State Courts**

As discussed earlier in addressing the Confrontation Clause issue raised in Ground Three, "[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher*, 444 F.3d at 798 (quoting *Newton*, 349 F.3d at 877); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  It is well-settled that to satisfy the "fair presentation" requirement for federal habeas review, a state prisoner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin*, 811 F.2d at 325 (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature.  *McMeans*, 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Fulcher,* 444 F.3d at 798; *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326.

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326. "While a petitioner need not cite chapter and verse of constitutional law, general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006) (internal citations and quotations omitted). Generally, a claim is not fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

It is respondent's position that petitioner failed to alert the state courts of the federal nature of his claim by only arguing that the felonious assault offenses were "allied offenses of similar import" that should have been merged under standards set forth in Ohio's multiple-count statute, Ohio Rev. Code § 2941.25. This Court disagrees.

In *Palmer v. Haviland,* No. C-1-04-28, 2006 WL 1308219, at *4-5 (S.D. Ohio May 11, 2006) (Weber, J.), *aff'd,* 273 F. App'x 480 (6th Cir. 2008), a judge on this Court rejected the same argument in a habeas case involving similar circumstances. Specifically, in *Palmer*, the petitioner similarly challenged his consecutive sentences for aggravated robbery and robbery in

16

the state courts on the ground that the offenses, which were "based on the same set of facts and involved a single victim," were allied offenses of similar import within the meaning of Ohio Rev. Code § 2941.25, as interpreted by the Ohio Supreme Court in *State v. Rance*, 710 N.E.2d 699 (Ohio 1999).  As in this case, the respondent argued that the petitioner failed to fairly present the federal due process issue to the state courts by limiting his claim "to an alleged state law violation."  *Palmer, supra,* 2006 WL 1308219, at *5.

The *Palmer* court concluded that the petitioner had sufficiently alerted the state courts to the federal nature of his claim because Ohio's multiple-count statute, as interpreted in *Rance,* is based on double jeopardy concerns; the court reasoned in pertinent part:

> *Rance* involved the branch of the Double Jeopardy Clause that protects against multiple punishments for the same offense in relation to Ohio's "allied offense" statute, Ohio Rev. Code § 2941.25. . . .  The Supreme Court of Ohio addressed the specific issue of whether "R.C. 2941.25(A) and the constitutional protections against double jeopardy prohibit trial courts from imposing separate sentences for both involuntary manslaughter and aggravated robbery.". . .  The Ohio Supreme Court recognized that "double jeopardy protections afforded by the federal and state Constitutions guard citizens against . . . cumulative punishments for the 'same offense.'". . .  The Ohio Supreme Court noted that "the Fifth Amendment's Double Jeopardy Clause (made applicable to the states by the Fourteenth Amendment) and Ohio's counterparts are sufficiently similar to warrant consultation of federal jurisprudence when analyzing Ohio's proscription against placing persons 'twice . . . in jeopardy for the same offense.'". . .  The *Rance* Court went on to analyze United States Supreme Court precedent on double jeopardy. . . .  The Ohio Supreme Court in *Rance* ultimately determined that the Ohio legislature could prescribe imposition of cumulative punishments for crimes stemming from the same criminal act "without violating the federal protections against double jeopardy or corresponding provisions of a state's constitution."

*Id.* at *6 (case citations omitted).  The Sixth Circuit did not address the waiver issue in affirming the district court's decision to deny federal habeas relief based on the merits of the double jeopardy claim.  However, tellingly, the Sixth Circuit did refer to the claim that had been raised by the petitioner in the state courts as "grounded in double-jeopardy concerns."  *Palmer,* 273 F.

App'x at 481.

Most federal courts within this District have followed *Palmer* in rejecting the argument that a claim challenging multiple sentences imposed in violation of Ohio's multiple-count statute fails to place the state courts on notice that there is a federal constitutional dimension to the claim. *See, e.g., Ashipa v. Knab,* No. 1:08cv879, 2010 WL 5184789, at *7 (S.D. Ohio Dec. 15, 2010) (Barrett, J.); *see also Spence v. Sheets,* 675 F. Supp.2d 792, 824-25 (S.D. Ohio 2009); *Ball v. Knab,* No. 2:09cv480, 2010 WL 4570226, at *7-8 (S.D. Ohio Oct. 12, 2010), *adopted,* 2010 WL 4570207 (S.D. Ohio Nov. 4, 2010); *Fortner v. Warden, Mansfield Corr. Inst.,* No. 2:09cv977, 2010 WL 1839041, at *3-4 (S.D. Ohio May 5, 2010), *adopted,* 2010 WL 2303280 (S.D. Ohio June 8, 2010); *Church v. Wolfe,* No. 2:06cv764, 2007 WL 2446707, at *1, *5-6 (S.D. Ohio Aug. 23, 2007).[5]

The undersigned is persuaded by the well-reasoned decision in *Palmer* and the cases following *Palmer* that petitioner fairly presented the double jeopardy issue to the state courts on direct appeal.

The Ohio courts have consistently recognized that double jeopardy concerns are implicated when addressing claims that multiple convictions should have been merged under Ohio Rev. Code § 2941.25.  The Ohio Supreme Court has expressly emphasized: "In Ohio we have . . . attempted to effectuate the principles of the Double Jeopardy Clause of the United States Constitution not only generally by way of Section 10 of Article I of the Ohio Constitution,

---

[5]*But cf. Musselman v. Warden, Chillicothe Corr. Inst.,* No. 3:09cv407, 2010 WL 1995091, at *3-4 (S.D. Ohio May 19, 2010) (Merz, M.J.) (denying a certificate of appealability for a double jeopardy claim that was defaulted because the petitioner relied "on Ohio decisions interpreting the allied import statute" in the state courts); *Dixson v. Warden, Warren Corr. Inst.,* No. 1:08cv540, 2010 WL 60905, at *1, *7-8 (S.D. Ohio Jan. 5, 2010) (holding the double jeopardy claim, which was argued in the state courts "solely in terms of Ohio Revised Code § 2941.25," was defaulted).  In contrast to the *Palmer* line of cases, however, the court in *Musselman* and *Dixson* did not consider the fair presentation issue in light of Ohio precedents recognizing that double-jeopardy concerns are inherently involved in determining whether multiple convictions should have been merged under the state statute.

*but also by way of R.C. 2941.25, the so-called multiple-count statute.*"  *State v. Thomas*, 400 N.E.2d 897, 902 (Ohio 1980) (emphasis added), *overruled on other grounds by State v. Crago,* 559 N.E.2d 1353 (Ohio 1990).  Moreover, in numerous decisions, the state appellate courts, including the First District Court of Appeals which decided petitioner's appeal, have pointed out that the "allied offense statute" is premised on "protect[ing] against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions."  *See, e.g., State v. Gonzales,* 783 N.E.2d 903, 912 (Ohio Ct. App. 1 Dist. 2002), *appeal dismissed,* 782 N.E.2d 78 (Ohio 2003); *State v. Moore,* 675 N.E.2d 13, 16 (Ohio Ct. App. 1 Dist.) (and cases cited therein), *appeal dismissed,* 671 N.E.2d 1283 (Ohio 1996).[6]

In any event, in the instant case, petitioner cited state court decisions addressing the underlying double jeopardy issue in arguing on appeal that his felonious assault convictions should have been merged.  Specifically, like the petitioner in *Palmer,* he cited *Rance* in his appellate brief to the Ohio Court of Appeals.  (*See* Doc. 7, Ex. 7, p. 9 n.17).  Moreover, in his memorandum in support of jurisdiction to the Ohio Supreme Court (*see* Doc. 7, Ex. 13, p.13 n.15), he cited the Ohio Supreme Court's decision in *State v. Cabrales,* 886 N.E.2d 181 (Ohio 2008), wherein it was noted that if *Rance* were interpreted as requiring that all the elements of the compared offenses must coincide exactly to be considered allied offenses of similar import, the interpretation would be "incongruous because the state is ... prohibited from punishing a defendant for identical, duplicate offenses pursuant to the Double Jeopardy Clause."  *Cabrales,*

---

[6]*See also State v. Lowery,* No. 2007-T-0085, 2008 WL 1777845, at *2 (Ohio Ct. App. 11 Dist. Apr. 21, 2008); *State v. Polk,* No. 88639, 2007 WL 2443883, at *2 (Ohio Ct. App. 8 Dist. Aug. 30, 2007); *State v. Downing,* No. 22012, 2004 WL 2535422, at *9 (Ohio Ct. App. 9 Dist. Nov. 10, 2004); *State v. Moore,* No. E-03-006, 2004 WL 291145, at *2 (Ohio Ct. App. 6 Dist. Feb. 13, 2004); *State v. Brindley,* No.01AP-926, 2002 WL 1013033, at *2 (Ohio Ct. App. 10 Dist. May 21, 2002), *appeal dismissed,* 775 N.E.2d 857 (Ohio 2002); *State v. Ritchie,* No. 15792, 1997 WL 435698, at *17 (Ohio Ct. App. 2 Dist. July 25, 1997), *appeal dismissed,* 686 N.E.2d 274 (Ohio 1997); *cf. Rogers v. Moore,* No. 1:07cv456, 2008 WL 2640664, at *1, *5 (S.D. Ohio July 2, 2008) (Spiegel, J.; Black, M.J.).

886 N.E.2d at 186-87 & n.2.

Indeed, it appears from the record that the state courts actually considered the double jeopardy issue in this case. In dissenting from the majority decision to uphold petitioner's multiple felonious assault convictions, a judge on the appellate court panel stated: "As I said when dissenting in [the case relied on by the majority], 'One gun, one shot, one felonious assault.' Nothing has changed since then; in fact, nothing has changed since the Double Jeopardy Clauses of the Ohio and United States Constitutions became effective, except for misguided and bizarre Ohio court decisions that defy logic, law, and common sense." (Doc. 7, Ex. 9, p. 13). Furthermore, the Ohio Supreme Court affirmed the appellate court's determination on the authority of its decision in *State v. Brown*, 895 N.E.2d 149 (Ohio 2008), *cert denied*, 129 S.Ct. 1356 (2009), a case in which the state supreme court extensively discussed the Double Jeopardy Clause, as well as the legislative intent underlying the Ohio statute, in holding that the defendant could not be multiply punished on two aggravated assault charges arising out of "one stab wound to one victim." (*See* Doc. 7, Ex. 15).

Accordingly, the undersigned concludes that, contrary to respondent's contention in the return of writ, petitioner fairly presented the federal claim alleged in Ground One to the state courts for consideration. The double jeopardy issue, therefore, is subject to review on the merits.

**2. Petitioner's Double Jeopardy Claim Has Merit**

In this federal habeas case, the applicable standard of review for addressing the merits of petitioner's double jeopardy claim is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

20

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* __ U.S. __, 130 S.Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'" *Miller v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor,* 529 U.S. 362, 390 (2000)), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851).

In addition, the "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. . . . The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. . . . The focus on the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and ... an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted). Under § 2254(d)(1)'s "unreasonable application" clause, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

21

This case involves the Constitution's Double Jeopardy Clause, which was made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), and among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer,* 273 F. App'x at 484 (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989).

Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,*

432 U.S. at 167; *Banner,* 886 F.2d at 780; *Palmer,* 273 F. App'x at 486 (on federal habeas review, "[w]e cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent").  A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause.  Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8.

In Ohio, the legislature's intent in the multiple punishment area may be discerned from Ohio Rev. Code § 2941.25.  *See Rance,* 710 N.E.2d at 635.  The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Ohio Supreme Court has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus.  *Rance,* 710 N.E.2d at 636; *see also Cabrales,* 886 N.E.2d at 184.  The applicable test for deciding the issue potentially involves a two-step analysis under the state statute.  *Brown,* 895 N.E.2d at 153-54; *Cabrales,* 886 N.E.2d at 184 (and cases cited therein).

Under the first step, the statutory elements of the various crimes are compared "in the abstract" without regard to the particular facts of the case; if the offenses are found to be of

23

dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Rance,* 710 N.E.2d at 636; *see also Brown,* 895 N.E.2d at 154; *Cabrales,* 886 N.E.2d at 184.  On the other hand, if the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See Rance,* 710 N.E.2d at 636; *see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997).

The "abstract elements-comparison test" adopted in *Rance* for determining whether multiple offenses are similar or dissimilar under the first step of the inquiry was clarified by the Ohio Supreme Court in *Cabrales* to resolve a conflict that had arisen among the intermediate appellate courts in applying the test. *See Cabrales,* 886 N.E.2d at 184-88.  Specifically, in *Cabrales,* the court held that some courts, including the First District Court of Appeals, had misinterpreted the *Rance* test as requiring a "strict textual comparison" of the elements. *See id.* at 185-87 (overruling *State v. Palmer,* 772 N.E.2d 726, 728 (Ohio Ct. App. 1 Dist. 2002)).  In rejecting such an interpretation of *Rance* as "overly narrow," the court reasoned in pertinent part:

> [N]owhere does *Rance* mandate that the elements of compared offenses must exactly align for the offenses to be allied offenses of similar import under R.C. 2941.25(A).  To interpret *Rance* as requiring a strict textual comparison would mean that only where *all* the elements of the compared offenses coincide *exactly* will the offenses be considered allied offenses of similar import under R.C. 2941.25(A).  Other than identical offenses, we cannot envision any two offenses whose elements align *exactly*.

*Id.* at 186-87 (emphasis in original).  The court further noted that "[s]uch an interpretation is incongruous because the state is already prohibited from punishing a defendant for identical, duplicate offenses pursuant to the Double Jeopardy Clause." *Id.* at 187 n.2.  Emphasizing that

the "basic thrust of [Ohio Rev. Code § 2941.25(A)] is to prevent 'shotgun' convictions," the

Ohio Supreme Court concluded:

> It is clear that interpreting *Rance* to require a strict textual comparison under R.C.
> 2941.25(A) conflicts with legislative intent and causes inconsistent and absurd
> results. Accordingly, we clarify that in determining whether offenses are allied
> offenses of similar import under R.C. 2941.25(A), *Rance* requires courts to
> compare the elements of offenses in the abstract, i.e., without considering the
> evidence in the case, but does not require an exact alignment of elements.

*Id.* at 187-88.

After *Cabrales* was decided in April 2008, the Ohio Supreme Court "was again called

upon to revisit [its] 1999 decision in [*Rance*] and to clarify whether pursuant to its holding and

R.C. 2941.25, a defendant may be convicted and sentenced for two separate crimes arising out of

two forms of the same offense based on a single criminal act–here aggravated assault for

stabbing one victim, one time." *See Brown*, 895 N.E.2d at 150. In *Brown*, which was decided in

September 2008, the Ohio Supreme Court held that the defendant's convictions on two alternate

theories of aggravated assault should have been merged as allied offenses of similar import

because the Ohio legislature "did not intend [the two means of committing the same offense] to

be separately punishable when the offenses result from a single act undertaken with a single

animus." *Id.* at 150-51.

In reaching its decision, the court found that the two forms of aggravated assault did not

satisfy the *Rance* test as clarified in *Cabrales* "because, comparing the elements of the offenses

in the abstract, the commission of one will not necessarily result in the commission of the other."

*Id.* at 155. However, the court went on to point out that the two-tiered test for allied offenses was

"designed to determine legislative intent," and that "[w]hile [the] test . . . is helpful in construing

legislative intent, it is not necessary to resort to that test when the legislature's intent is clear

25

from the language of the statute." *Id.* at 155-56.  The court concluded that the Ohio legislature had "plainly and unambiguously conveyed its legislative intent" regarding separate convictions on alternate theories of aggravated assault; the court reasoned in relevant part as follows:

> R.C. 2903.12 defines the offense of aggravated assault.  Division (A) of that section sets forth the distinguishing factor of provocation and the requisite mens rea for the offense:  knowingly.  Then subdivisions (1) and (2) set forth two means of committing the offense–causing serious physical harm to another, or causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance.  These subdivisions set forth two different forms of the same offense, in each of which the legislature manifested its intent to serve the same interest–preventing physical harm to persons. . . .
>
> In light of this statutory language, we conclude that the General Assembly did not intend violations of R.C. 2903.11(A)(1) and (A)(2) to be separately punishable when the offenses result from a single act undertaken with a single animus.  Thus, aggravated assault in violation of R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import.

*Id.* at 156.

In this case, no issue has been raised that the felonious assault convictions, stemming from one injury involving one victim, were committed separately or with a separate animus under the second step of the *Rance* test.[7]  In addition, it is clear from the record that like the defendant in *Brown*, petitioner was separately convicted in this case for the felonious assault of Officer Holtmann based on alternate theories of (1) knowingly causing her serious physical harm under Ohio Rev. Code § 2903.11(A)(1) (Count 4) and (2) knowingly causing or attempting to cause her physical harm by means of a deadly weapon or dangerous ordnance under Ohio Rev. Code § 2903.11(A)(2) (Count 3).  (*See* Doc. 7, Exs. 1, 5).

Therefore, as in *Brown*, the disposition of petitioner's claim for relief turns on the first

---

[7]Indeed, in the state appeal proceedings, the State only argued that the two crimes were not allied offenses under the *Rance* "abstract elements-comparison test."  (*See* Doc. 7, Ex. 8, pp. 10-11).  Moreover, the state appellate courts addressed petitioner's claim solely under the first step of the *Rance* inquiry.  (*See* Doc. 7, Ex. 9, p. 8; Exs. 15-17).

step of the *Rance* inquiry, which involves a determination of a state-law issue as to whether the Ohio legislature intended multiple punishments for felonious assault based on alternative theories for establishing guilt, when there is only one victim and one injury.  The Ohio Supreme Court has twice answered this precise question in petitioner's favor.  On December 9, 2008, the Ohio Supreme Court reversed the judgment of the Ohio Court of Appeals, First Appellate District, "on the authority of . . . *Brown*," in a case factually analogous to the case-at-hand where the appellate court had ruled that "two counts of felonious assault in violation R.C. 2903.11(A)(1) and (2) were . . . not . . . allied offenses of similar import under R.C. 2941.25(A)."  *State v. Cotton,* 898 N.E.2d 959 (Ohio 2008).  Thereafter, in *State v. Harris,* 911 N.E.2d 882, 886 (Ohio 2009), the Ohio Supreme Court reaffirmed, "[o]n the authority of *Cotton*," that "convictions for felonious assault defined in R.C. 2903.11(A)(1) and felonious assault defined in R.C. 2903.11(A)(2) are allied offenses of similar import, and therefore a defendant cannot be convicted of both offenses when both are committed with the same animus against the same victim."

More recently, the Ohio Court of Appeals, First Appellate District, agreed to reconsider a December 2007 decision rejecting a challenge to multiple convictions for attempted murder and two counts of felonious assault relating to the shooting of a single victim in rapid succession. *See State v. Gandy,* No. C-070152, 2010 WL 2543911 (Ohio Ct. App. 1 Dist. June 25, 2010) (per curiam), *appeal dismissed*, 935 N.E.2d 46 (Ohio 2010).  The court stated: "We have granted [the] application for reconsideration because the [state] supreme court's decisions in *Cabrales*, *Harris*, and [another case pertaining to the attempted murder count] make apparent our error in overruling Gandy's . . . assignment of error."  *Id.* at *2.  The court vacated the sentences imposed for attempted murder and both felonious assault counts, reasoning that "because the shooting involved Gandy's discharge of three bullets into a single victim in rapid succession, the offenses

cannot be said to have been committed separately or with a separate animus as to each." *Id.* at
*2-3.

In the instant case, as in *Gandy*, when the Ohio Court of Appeals issued its December
2007 decision affirming petitioner's multiple convictions for felonious assault, *Brown* had not
been decided and the Ohio Supreme Court had not issued its decision in *Cabrales* rejecting the
"strict textual comparison" test applied by the First District Court of Appeals in evaluating
"allied offense" claims.  Citing case-law employing the "strict textual comparison" test, the Ohio
Court of Appeals summarily overruled petitioner's assignment of error on the ground that
"felonious assault in violation or R.C. 2903.11(A)(1) and felonious assault in violation of R.C.
2903.11(A)(2) are not allied offenses."  (Doc. 7, Ex. 9, p. 8).[8]

*Cabrales* and *Brown* were decided during the pendency of petitioner's subsequent appeal
to the Ohio Supreme Court, and *Cotton* was decided on the same date that the Ohio Supreme
Court issued its Judgment Entry in the instant case affirming the Ohio Court of Appeals' direct
appeal decision.  (*See* Doc. 7, Ex. 15).  Because petitioner's conviction did not become final until
the ninety-day period expired for filing a petition for writ of certiorari to the United States
Supreme Court, the three Ohio Supreme Court decisions are applicable in determining the state
legislature's intent in this case.  *Cf. Beard v. Banks,* 542 U.S. 406, 411 (2004) (quoting *Caspari
v. Bohlen,* 510 U.S. 383, 390 (1994)) ("State convictions are final 'for purposes of retroactivity
analysis when the availability of direct appeal to the state courts has been exhausted and the time
for filing a petition for writ of certiorari has elapsed or a timely petition has been finally
denied.'"); *Allen v. Moore,* No.1:05cv731, 2007 WL 651248, at *4 n.1. (S.D. Ohio Feb. 23,

---

[8]As discussed earlier, one judge on the three-judge panel dissented from the majority ruling, citing double
jeopardy concerns about the two felonious assault convictions for "[o]ne gun, one shot, one felonious assault."
(Doc. 7, Ex. 9, p. 13).

2007) (Barrett, J.) (same).[9]

In *Cabrales*, the Ohio Supreme Court abrogated the "strict textual comparison" test that the intermediate appellate court used in finding that the felonious assault counts, stemming from one shooting involving a single victim, were of dissimilar import and thus not subject to merger under Ohio Rev. Code § 2941.25(A).  *See Cabrales,* 886 N.E.2d at 185-87.  Moreover, in *Brown* and *Cotton*, the Ohio Supreme Court made it clear that the state legislature did not intend to authorize cumulative punishments for those crimes, involving two alternate means of committing the same offense based on a single criminal act–*i.e.*, felonious assault for shooting "one victim, one time."  *Cf. Brown,* 895 N.E.2d at 150-51, 156; *see also Cotton*, 898 N.E.2d at 959.

It is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)).  However, by the same token, the highest court of the state is the final arbiter of the state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law."  *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case).  "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

---

[9]*Cf. Jimenez v. Quarterman,* 555 U.S. 113, 129 S.Ct. 681, 685-86 (2009) (for federal habeas statute of limitations purposes, a state conviction is not final until the process of direct review, which includes certiorari review by the United States Supreme Court, "comes to an end"); *State v. Colon,* 893 N.E.2d 169, 170 (Ohio 2008) (under Ohio law, "newly declared constitutional rules in criminal cases" may be applied "to cases that are pending on the announcement date"), *overruled on other grounds by State v. Horner,* 935 N.E.2d 26 (Ohio 2010).

*West,* 311 U.S. at 237 (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks,* 485 U.S. at 630 n.3); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

Here, the undersigned is convinced that the First District Court of Appeals' construction of Ohio's allied offense statute is entitled to no deference and may be disregarded because it was based on a standard of review expressly rejected in *Cabrales* as triggering double jeopardy concerns. The harder question presented here is the deference to be accorded the Ohio Supreme Court's rulings affirming petitioner's convictions and consecutive sentences on the two felonious assault counts. Specifically, in the face of its contradictory holdings in *Brown* and *Cotton*, the Ohio Supreme Court summarily *affirmed* the Ohio Court of Appeals' decision "on the authority of *Brown*," and denied without opinion petitioner's subsequent motion for reconsideration, which cited *Cotton* in support of the claim that the appellate court "should have been *reversed* on the authority of . . . *Brown*." (Doc. 7, Exs. 15, 16-17) (emphasis added).

In the usual habeas case involving a federal issue that is "inextricably intertwined with the proper construction of [a state] statute," the court "must defer absolutely to the state court's disposition of the state-law question and proceed to review the court's application of federal law to ascertain whether or not it was reasonable." *Burleson v. Saffle,* 278 F.3d 1136, 1144 (10th Cir. 2002) (citing *Schad v. Arizona,* 501 U.S. 624, 636 (1991) (Souter, J., concurring); *Johnsonv v. Fankell,* 520 U.S. 911, 916 (1997); *Robinson v. California*, 370 U.S. 660, 666 (1962)). In such cases, the federal habeas court "will normally defer to a state court's result even when it is unaccompanied by supporting reasoning." *Id.* (citing *Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999)). Nevertheless, as in *Burleson*, the Court in this case has been placed in an "unusual position" given the Ohio Supreme Court's "silence" in summarily deciding the matter in the

30

State's favor "on the authority of . . . *Brown,*" despite the fact that *Brown* can only be interpreted as requiring the opposite result.  *Cf. id.*[10]

Although "federal habeas relief does not lie for errors of state law," *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990), relief may be granted to the extent that the habeas petitioner demonstrates that he was deprived of a right to which he was entitled under state law which rose to the level of a violation of his constitutional right to due process.  *See, e.g., Davis v. Strack,* 270 F.3d 111, 123-24 (2nd Cir. 2001) (and cases cited therein); *Martin v. Wilson,* 419 F. Supp.2d 976, 985 n.5 (N.D. Ohio 2006).  This is such a case.

Here, petitioner has demonstrated that he was deprived of a right to which he was entitled under state law when the Ohio Supreme Court affirmed his multiple convictions for felonious assault on the authority of a state supreme court precedent that actually required the merger of his convictions as allied offenses of similar import under Ohio Rev. Code § 2941.25(A).  In addition, petitioner has demonstrated that the error rose to the level of a due process violation under the Double Jeopardy Clause because the Ohio legislature did not intend the two means of committing the same offense to be separately punishable in a case such as this, where the felonious assaults stemmed from "a single act undertaken with a single animus," *Brown*, 895 N.E.2d at 150-51, 156; *Cotton,* 898 N.E.2d at 959.  *See Hunter,* 459 U.S. at 366-68; *see also Jones,* 491 U.S. at 381; *Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 165-67.

---

[10] In *Burleson,* the question whether the state legislature intended to prescribe multiple punishments for the petitioner's offenses was difficult to assess, because the state appellate court was silent "as to the reasons for its affirmance of [the] conviction," and "the only authoritative construction" of the relevant statute was found in a subsequent state supreme court decision issued *after* the petitioner's conviction became final, which supported the petitioner's claim that he was improperly subjected to multiple punishments for one offense.  *See Burleson*, 278 F.3d at 1139, 1143-44.  The Tenth Circuit decided in that case to certify the predicate state-law issue to the state supreme court and to stay the federal habeas case "until we receive an answer" from the state court.  *Id.* at 1145.  Here, in contrast to *Burleson*, the state supreme court provided an "authoritative construction" of the relevant statute *before* petitioner's conviction became final, which supports petitioner's claim that he was improperly subjected to multiple punishments for one offense.  Therefore, certification of the predicate state-law issue is not necessary in this case.

31

Accordingly, the undersigned concludes that the state courts' adjudication of petitioner's claim challenging his convictions and consecutive sentences on the felonious assault counts stemming from the shooting of Officer Holtmann (Counts 3-4) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established controlling Supreme Court precedents pertaining to double jeopardy, "multiple punishment" claims, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Petitioner, therefore, is entitled to habeas corpus relief on the due process claim alleged in Ground One of the petition.

Issuance of an unconditional writ of habeas corpus is inappropriate in this case, however, because under the "doctrine of merger" set forth in Ohio's multiple-count statute, an accused may be charged and tried for both offenses, although he "may be convicted and sentenced for only one." *See Brown,* 895 N.E.2d at 157. The prosecution is given the choice "to pursue one offense or the other, and it is plainly the intent of [Ohio's] General Assembly that the election may be of either offense." *Id.* (quoting *City of Maumee v. Geiger,* 344 N.E.2d 133, 137 (Ohio 1976)). Therefore, petitioner is entitled to relief only to the extent that (1) the two felonious assault charges resulting in guilty verdicts (Counts 3-4) must be merged into one conviction at the State's election for sentencing purposes as "allied offenses of similar import" under Ohio Rev. Code § 2941.25; and (2) petitioner must be resentenced for only one felonious assault offense. *Cf. id.*; *see also State v. Moore,* No. C-070421, 2008 WL 3544342, at *1 (Ohio Ct. App. 1 Dist. Aug. 15, 2008) (holding that it was "prejudicial plain error" to impose concurrent sentences for allied offenses of similar import because the defendant's criminal record would still "reflect two convictions when he had committed only one criminal act"), *appeal dismissed,* 900 N.E.2d 200 (Ohio 2009). In all other respects, petitioner's convictions and sentences shall

remain undisturbed.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc.
1) be **DENIED** with prejudice, except to the extent that relief should be **GRANTED** on the
claim in Ground One that petitioner was multiply punished for the same offense in violation of
the Constitution's Double Jeopardy Clause when the trial court failed to merge his two felonious
assault convictions, stemming from a single act involving one victim, for sentencing purposes.
The writ of habeas corpus should be granted to remedy the constitutional violation unless, within
ninety (90) days after the filing of any Order adopting this Report and Recommendation, Ohio
merges the two felonious assault charges resulting in guilty verdicts (Counts 3-4) into one
conviction as "allied offenses of similar import" under Ohio Rev. Code § 2941.25 for sentencing
purposes, and resentences petitioner on that one conviction in accordance with the above
opinion.

2.  A certificate of appealability should not issue with respect to the claim alleged in
Ground Three asserting a violation of the Sixth Amendment's Confrontation Clause, which this
Court has concluded is waived and thus procedurally barred from review, because under the first
prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85
(2000), "jurists of reason" would not find it debatable whether this Court is correct in its
procedural ruling.[11]  A certificate of appealability also should not issue with respect to the due
process claim alleged in Ground Three, which has been addressed on the merits herein, in the
absence of a substantial showing that petitioner has stated a "viable claim of the denial of a

---

[11] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of
*Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional
claim in Ground Three.  *See Slack,* 529 U.S. at 484.

constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

  3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: <u>3/30/2011 </u>     <u>s/Karen L. Litkovitz   </u>
<br><small>cbc</small>             Karen L. Litkovitz
<br>               United States Magistrate Judge

# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

DANTE PERSON,                                        Civil Action No. 1:10-cv-35
      Petitioner

      vs                                        Barrett, J.
                                                 Litkovitz, M.J.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,
      Respondent


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).